IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| NEIL WALKER, #095197, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:17-CV-591-MHT |
| ) | |
| JEAN DARBOUZE, et al., ) | |
| ) | |
| Defendants. ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE[1]

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint and amendment thereto filed by Neil Walker, a state inmate currently incarcerated at the Easterling Correctional Facility. In the instant case, Walker challenges the constitutionality of medical treatment provided to him for a urinary tract infection that he believes resulted in his contracting a rare type of bladder cancer.

On October 20, 2017, the plaintiff filed a motion for preliminary injunction in which he seeks issuance of a preliminary injunction requiring defendant Darbouze to refer him for examination and treatment by free world specialists. Doc. No. 11 at 2. The medical defendants filed a response in opposition to the motion for preliminary injunction, supported by affidavits and relevant medical records. Docs. No. 21 and 21-1.

---

[1] The documents and page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

Upon review of the motion for preliminary injunction and the response thereto filed by the medical defendants, the court concludes that this motion is due to be denied.

## II. STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Walker demonstrates each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunctive relief may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion' as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to

establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.' *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11th Cir. 1990)." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

## III.  DISCUSSION

In the motion for preliminary injunction, Walker requests that Dr. Darbouze be required to refer him to free world medical personnel for examination and treatment of his cancer. Dr. Darbouze, the Medical Director at Easterling and Walker's attending physician at such facility, addresses Walker's claim as follows:

> I am in receipt of and I have reviewed the legal complaint filed by Alabama state inmate Neil Walker (AIS# 095197). I am aware that Mr. Walker alleges that he has not received appropriate medical treatment for an alleged urinary tract infection and that according to Mr. Walker; the urinary tract infection resulted in cancer.
> I have reviewed Mr. Walker's medical chart and Mr. Walker's medical records from August 2016 to the present time are attached hereto.
> On January 26, 2017, Mr. Walker completed a sick call request stating that he was having problems urinating.
> Mr. Walker was triaged and evaluated by a nurse on January 27, 2017, at the health care unit at the Easterling Correctional Facility. Mr. Walker complained of having problems urinating. He also complained of having a rash in the groin area.
> I personally saw and evaluated Mr. Walker on February 9, 2017. Blood and chemical tests of Mr. Walker were performed at that time.

Mr. Walker was again seen by a nurse and evaluated on March 1, 2017. Again, Mr. Walker was complaining with problems urinating as well as a rash on his groin area. Mr. Walker informed the nurse that he had previously been provided Kenalog for his rash and it worked and he wanted the prescription renewed.

On March 2, 2017, I again personally saw and evaluated Mr. Walker. Labs were again taken of Mr. Walker.

On March 13, 2017, Mr. Walker was again evaluated by a nurse and informed the nurse that he had discovered blood in his urine.

On March 16, 2017, I again personally saw and evaluated Mr. Walker and performed a physical examination of Mr. Walker. Further labs and blood tests were performed on Mr. Walker.

On March 22, 2017, Mr. Walker was seen by a nurse in the health care unit and again evaluated for Mr. Walker's complaints of blood in his urine.

I again personally saw and evaluated Mr. Walker on March 28, 2017. A physical examination again was performed of Mr. Walker and chemical and blood tests were again performed on Mr. Walker…. I [also] recommended a urology consult for Mr. Walker.

On March 31, 2017, an ultrasound was taken of Mr. Walker. The ultrasound was read by the radiologist as follows:

> **US-retroperitoneal, complete.**
> **Clinical indications:** hematuria, unspecified.
> **Findings:** retroperitoneal ultrasound, complete: the right kidney measure[s] 10.0 cm in length and left kidney 12.0 cm in length. Both have grossly preserved sonographic cortical medullary demarcation without mass, stones or hydronephrosis. Right renal cyst measuring up to 2.0 cm in size. There is no perinephric fluid. No AAA. IVC is not visualized. No abnormalities seen involving the urinary bladder. At least one ureteral jet is visualized. **Impression:** no acute structural renal abnormalities seen.

On April 13, 2017, Mr. Walker was seen by a urology specialist physician at Urological Associates in Dothan, Alabama. The history taken by the urologist was as follows:

> 70-year old inmate referred for urinary tract infection and microscopic hematuria. His urine has been sent for cytology by the doctor at the prison and according to his records was negative. His last PSA was 0.24 but I am unaware what year or date it is drawn. He states he has seen blood a few times. He also complains of

nocturia up to 4-5 times. He states his stream is slow and his urine will start and stop. He has had radiation for his prostate cancer back in 2011. He states his urinary symptoms have been present for a year, the blood in his urine for approximately a few weeks. He has a history of prostate cancer. He denies any dysuria, pyuria, fevers, chills, flank pain, or gross hematuria.

The procedure documentation as set forth by the urologist is as follows:

> After a timeout was performed and proper informed consent obtained, the flexible cystoscope was advanced into the urethra. The meatus, anterior, and bulbar urethra were normal. Prostatic fossa was 4.0 cm with mild lateral lobe hypertrophy, coaptoing to the midline from the bladder neck to the middle of the gland. There was no significant intravesical component to the prostate. There was no ball-valving component to the median lobe. Ureteral orifices were orthotopic and normal in configuration with clear efflux seen bilaterally. Bladder mucosa was remarkable for a 2.0 cm papillary lesion located on the posterior wall. Trabeculations were seen. The cystoscope was removed from the patient without difficulty. The patient tolerated the procedure well.

I again saw and evaluated Mr. Walker on April 25, 2017. My notes indicate that Mr. Walker was recently diagnosed with a bladder tumor after the cystoscopy was performed by the radiologist. Mr. Walker was scheduled to see the urologist again for further procedures.

Mr. Walker was seen at the South East Alabama Medical Center in Dothan, Alabama, on May 11, 2017, where a biopsy was taken of Mr. Walker's bladder tumor.

A cystoscopy was also performed on May 11, 2017. The surgeon's notes set forth as follows:

> **Pre-operative diagnosis:** A 2 cm prostheca wall bladder tumor.
>
> **Post-operative diagnosis:**
> 1. A 2 cm posterior right sided bladder tumor.
> 2. Normal retrograde pyelograms.
>
> **Procedures:**

1. Cystoscopy with a retrograde pyelograms.
2. Transurethral resection of bladder tumor.

**Description of Procedure:**

The patient was consented for the above, taken to the operating room. After an LMA anesthetic, pneumatics, Ancef, patient was placed on the cystoscopy table in lithotomy position, padding all pressure areas. Perineum was prepped with Vetadine and draped with sterile drapes. At this time, cysto was performed showing a normal appearing urethra prostate 3 cm in length. In the bladder, distal to its right UO has a 2 cm papillary looking lesion. At this time, 6ml of contrast was injected up right ureter, 6 ml of contrast was injected up left ureter. No filling defects. Rapid emptying. Resectoscope was then placed. The tumor was resected in total. Electrocautery was for hemostasis. The chips were evacuated out, sent for specimen. The patient then had a 16-french Foley catheter placed, return of clear yellow urine. Extubated and taken to recovery room in good condition.

On June 9, 2017, Mr. Walker was thereafter seen at the Troy Regional Medical Center by Timothy L. Eakes, MD, Roentgenologist. Dr. Eakes records from that date state as follows:

**Clinical indication:** History of bladder tumor removal.

**CT Scan of Chest Six Pack/Nine:** technique: serial axial images of the chest were done following the intravenous injection of 100cc of Omnipaque 300 and lung and mediastinal windows are evaluated in the axial projection with coronal reconstruction similar windows also being evaluated. Automated exposure control was utilized.

**Findings:** There is pleural scarring in the left side of the chest with associated pleural calcification and there is elevation of the left hemidiaphragm. There are multiple metallic foreign bodies in the area of the left shoulder and upper chest producing some streak artifact though active pulmonary infiltration or mass type lesion is seen. The markings in the right of the lung are slightly prominent but not mass like in nature.

There are some generalized arteriosclerotic changes. There are some degenerative changes within the included spine. The included great vessels are of normal caliber. No other significant findings are noted.

**CT Scan of Abdomen 6/9:** technique: serial axial images of the abdomen were done following the intravenous injection of 100 cc of Omnipaque 300 with GI contrast being utilized in soft tissue windows are evaluated in the actual projection with coronal reconstruction soft tissue windows are also being evaluated. Automated exposure control was utilized.

**Findings:** The liver, spleen and gall bladder appear normal but the [latter] could be better evaluated ultrasonographically if clinically warranted. The adrenal glands and pancreas appear normal. There are mild to moderate generalized arteriosclerotic changes and caliber of the abdominal aorta is normal. There are scattered metallic pellets in the area of the abdomen some of which in the abdominal wall and others in the intra-abdominal. The kidneys function following contrast administration and appear normal other than right bilateral cysts at least one in each kidney. The larger is on the right at 2 cm in diameter. There are mild to moderate degenerative changes within the included spine greater inferiorly within the lumbosacral region. There is prominence of feces in the colon.

**CT Scan of Pelvis:** technique: Serial actual images of the pelvis were done with soft tissue windows being evaluated.

**Findings:** The appendix appears normal. There is mild prominence of feces in the distal colon. There are multiple metallic pellets in the pelvic area. There is a filling defect in the right side of the bladder posterolaterally with some wall thickening which is suspicious of a mass but could be at least in part related to recent surgery. Recommend clinical correlation. The length of the area involved is approximately 2 cm. The prostate is normal in size with mild intrinsic calcification. There is ectasia of both inguinal canals.

No ascites or free air is seen. No other significant findings are noted.

Mr. Walker was followed up by the urologist, Robert Schuyler, M.D., at Urological Associates in Dothan, on June 13, 2017. Dr. Schuyler's notes state in part as follows:

> Patient is a 70-year old with hypertension, diabetes, prostate cancer: treated with radiation in 2011. Last PSA was 0.24, who follows-up today after this TURBT. Patient has no post- biopsy difficulties.
>
> * * *
>
> **Assessment/Plan**
>
> Lymphoma or Bladder cancer: Talked to Dr. Misischia obtaining a non-contrast CT scan of the chest, abdomen, and pelvis today and she will see him after this to discuss treatment options. For his prostate cancer PSA was 0.24. Patient is going to follow-up with me in six months for PSA and also check status.

On July 9, 2017, Mr. Walker complained of again having problems urinating.

Mr. Walker was seen and evaluated by a nurse on July 10, 2017.

Mr. Walker was sent out to see an oncologist on July 13, 2017. The notes from the physician from July 13, 2017 were recorded as follows:

> * * *
>
> **Assessment/plan:** Patient is a 70 year old African-American male with history of prostate carcinoma. Status post treatments as mentioned above currently has extranodal marginal zone lymphoma involving the bladder. He needs further staging work-up. Will request cystoscopy procedure notes from urologist. Will check CBC, CMP, PSA, LDH, HIV and Hepatitis B and Hepatitis C serology today. Will request PET/CT scan for staging work-up as he has mediastinal lymphadenopathy. Based on the results, he may require bone marrow biopsy and then consider treatment as appropriate. Discussed with the patient extensively regarding his diagnosis, staging work-up and treatment options as appropriate.
>
> Multiple questions he had were answered to his satisfaction. He will RTC for follow up after the above

work-up is completed. He was advised to contact me in the inter[im] with any questions or concerns….

On July 31, 2017, I consulted with Richard R. Kosierowski, M.D., an Oncologist who is Board Certified in Internal Medicine and Medical Oncology. Dr. Kosierowski's opinions are attached hereto and state:

> . . . .
>
> **S:** 70-Year-Old with marginal Zone NHL
>
> **O:** Patient with HX of prostate cancer S/P XRT and hormones
>
> Off all therapy since 2011 with an acceptable PSA of 0.24. Recent bladder biopsy from 5/2017 with fragments of extranodal marginal zone NHL. Staging CT from 6/2017 with non specific mediastinal nodes of 1.5 cm. Current request for PET/CT for complete staging
>
> **A:** Marginal zone NHL
>
> **P:** While PET/CT may be an appropriate test for patients with marginal zone NHL, the test is not necessary and will add little to the patients treatment plan.
>
> If the PET were negative, the patient could have localized marginal zone NHL and therefore can be considered for 'curative' measure. However, the only curative option would be either cystectomy or further XRT to the bladder and neither of these options would be indicated given the indolent nature of this NHL
>
> If patient had a + PET/CT for mediastinal nodes, the patient is at least Stage III. Therapy for advanced marginal zone is only to be considered if patient meets GELF criteria.
>
> His only complaints are some urinary burning
>
> I do not think that systemic therapy is indicated regardless of the results of the PET/CT
>
> Patient needs continued on site eval of PSA/DRE as F/U of prostate cancer needs on site F/U for signs/symptoms of progressive NHL such as bulky adenopathy or cytopenias etc (GELF criteria)
>
> The medical necessity of the bone marrow ASP and biopsy is likewise questioned at this point.

>       I recently saw Mr. Walker on August 9, 2017. Mr. Walker was recently diagnosed with non-Hodgkins Lymphoma that had localized into the bladder.
>       Mr. Walker is a 70 year old patient with marginal zone non-Hodgkin's Lymphoma with a history of prostate cancer prior to incarceration. Status post radiotherapy and hormones. Mr. Walker has been off all therapy since 2011 with an acceptable PSA of 0.24. Mr. Walker had a recent bladder biopsy from May 2017 with fragments of extranodal. Marginal zone NHA staging CT from June 2017 with non-specific mediastinal nodes of 1.5 cm. The PET/CT test is not necessary at this juncture and will add little to the patient's treatment plan if the PET were negative. The patient could have localized marginal zone lymphoma and therefore can be considered for "curative" measures. However, the only curative option would be either cystectomy or further chemotherapy to the bladder and neither of these options would be indicated given the indolent nature of this lymphoma. Therapy for advanced marginal zone is only to be considered if patient meets Group d'Etude des Lymphomes Folliculaires (GELF) criteria. The patient's only complaints are some urinary burning and systematic therapy is not indicated regardless of the results of the PET/CT. The patient needs to be continued with onsite evaluation of PSA/DRE as a follow up of prostate cancer. The patient needs onsite follow-up for signs and symptoms of progressive non-Hodgkin's Lymphoma such as bulky adenopathy or cytopenias, etc. (GELF criteria).
>       Mr. Walker continues to be seen and evaluated by myself and the medical staff at the Easterling Correctional Facility.
>       Mr. Walker has been regularly seen by both myself, as Mr. Walker's treating physician, as well as outside specialists for his medical concerns.

Doc. No. 21-1 at 2-11.

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Walker has failed to demonstrate a substantial likelihood of success on the merits of his deliberate indifference claim. Walker likewise fails to establish a substantial threat that he will suffer the requisite irreparable injury absent issuance of the requested preliminary injunction as he has been evaluated by free world specialists and the treatment recommendations of these physicians have been followed by correctional medical

personnel. The third factor, balancing potential harm to the parties, weighs more heavily in favor of the defendants as issuance of the injunction would adversely impact the ability of prison physicians to determine and implement the proper course of treatment for inmates. Finally, the public interest element of the equation is, at best, a neutral factor at this time. Thus, Walker has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of preliminary injunctive relief.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by the plaintiff be DENIED.

2. This case be referred back the undersigned for additional proceedings.

The parties may file objections to the Recommendation on or before **November 29, 2017**. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations as required by the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-

1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 15th day of November, 2017.

                                    /s/ Wallace Capel, Jr.
                            CHIEF UNITED STATES MAGISTRATE JUDGE